**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONI S. BYNUM, *et al.*, individually and on behalf of a proposed class,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>RED RIVER TALC, LLC f/k/a LLT MANAGEMENT LLC f/k/a LTL MANAGEMENT, LLC *et al.*,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 24-7065 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Red River Talc, LLC ("Red River"), Johnson & Johnson ("J&J"), New JJCI, Johnson & Johnson Holdco (NA) Inc., Janssen Pharmaceuticals, Inc., Kenvue Inc., and J&J Services, Inc.'s (collectively, "Defendants") Motion to Strike the Class Allegations and Dismiss Plaintiff Joni S. Bynum's ("Bynum") Medical Monitoring Claim (the "Motion"). (ECF No. 46.) Plaintiffs Bynum, Robin Coburn, James Coburn, Donnaletta F. Ruiz, and Shelly Williams (collectively, "Plaintiffs") opposed (ECF No. 49), and Defendants replied (ECF No. 50). After careful consideration of the parties' submissions, the Court decides Defendants' Motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion is granted.

**I.　BACKGROUND**

This action arises out of the long-running multidistrict litigation captioned *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*

(the "Talc Litigation," MDL No. 16-2738). Because the parties are familiar with the underlying MDL, the Court recounts only those facts necessary to resolve the instant motion.

On June 17, 2024, nearly eight years after the Talc Litigation commenced, Plaintiffs filed the instant action as a putative class action complaint. (*See generally* Compl., ECF No. 1.) Plaintiffs seek to represent a nationwide class consisting of: (1) all female U.S. residents who genitally applied Johnson's Baby Powder and/or Shower to Shower products (the "Defendants' Products") between 1960 and the present for more than four years, and who have not commenced an individual action or signed a written retainer agreement with non-class counsel for the pursuit of any individual, non-class personal injury claims arising from the use of and/or exposure to Defendants' Products ("Qualifying Talc Users"); (2) the authorized representatives of deceased or legally incapacitated or incompetent Qualifying Talc Users; and (3) the spouses or family members of Qualifying Talc Users who may properly assert derivative or independent claims. (Am. Compl. ¶ 44, ECF No. 30.)

Plaintiffs allege that their use of Defendants' Products either caused them to develop epithelial ovarian cancer, fallopian tube cancer, or primary peritoneal cancer (a "Defined Injury"), or placed them at an "increased risk of developing" one of these cancers. (*Id.* at 3, ¶¶ 1-5.) Of the five named Plaintiffs, one alleges that she developed serous fallopian tube cancer as a result of her use of Defendants' Products; three allege no present physical injury and instead assert claims based on an "increased risk" of developing a Defined Injury; and one asserts a derivative claim based on his relationship to another named Plaintiff.[1] (*Id.* ¶¶ 1-5.)

---

[1] Plaintiff James Coburn brings a derivative claim based on his spouse Robin Coburn's use of Defendants' Products. (Am. Compl. ¶ 5.)

Plaintiffs assert a total of nineteen claims against Defendants, including medical monitoring, strict liability, negligence-based claims, fraud and misrepresentation, statutory consumer protection claims under numerous state laws, conspiracy-based claims, loss of consortium, wrongful death, survival, and claims for punitive damages. (*Id.* ¶¶ 336-496.)

Plaintiffs assert these claims on behalf of themselves and all others similarly situated in five discrete subclasses. (*See id.* ¶ 45.) Specifically, Subclasses 1, 2, and 5 include individuals with no current Defined Injury, while Subclasses 3 and 4 include individuals who allege a Defined Injury. (*Id.*) Moreover, while Subclasses 1, 2, and 3 seek medical monitoring, Subclasses 4 and 5 seek compensatory and punitive damages. (*Id.*) Plaintiffs define the five subclasses as follows:

> [Subclass 1: Independent Claim For Medical Monitoring—] Qualifying Talc Users (Class Members) residing in Alaska, Arizona, Arkansas, California, Colorado, the District of Columbia, Florida, Hawaii, Idaho, Maine, Massachusetts, Minnesota, Montana, New Hampshire, New Mexico, Pennsylvania, South Dakota, Utah, West Virginia, or Wyoming and the Representative Claimants of legally incapacitated or incompetent Qualifying Talc Users (residing in the aforementioned jurisdictions) who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a [Defined Injury].
>
> [Subclass 2: Medical Monitoring Remedy—Qualifying Talc Users] (Class Members) residing in California, the District of Columbia, Guam, Indiana, Kansas, Maryland, Missouri, Nevada, New Jersey, New York, Ohio, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Vermont, the U.S. Virgin Islands, Virginia, or Washington and the Representative Claimants of legally incapacitated or incompetent Qualifying Talc Users (residing in the aforementioned jurisdictions) who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a [Defined Injury].

[Subclass 3: Medical Monitoring Remedy—] Qualifying Talc Users (Class Members) residing in Alabama, Connecticut, Delaware, Georgia, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Oklahoma, Oregon, Wisconsin and the Representative Claimants of legally incapacitated or incompetent Qualifying Talc Users (residing in the aforementioned jurisdictions) who as of the date of the Court's Preliminary Approval and Class Certification Order have been diagnosed with a [Defined Injury].

[Subclass 4: Compensatory and Punitive Damages for Current Defined Injury—] Qualifying Talc Users (Class Members) residing in any state or territory of the United States who as of the date of the Court's Preliminary Approval and Class Certification Order have been diagnosed with a [Defined Injury].

[Subclass 5: Compensatory and Punitive Damages for Future Defined Injury—] Qualifying Talc Users (Class Members) residing in any state or territory of the United States who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a [Defined Injury].

(*Id.*)

Defendants move to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f),[2] and to dismiss Plaintiff Bynum's medical monitoring claim under Rule 12(b)(6). (ECF No. 46.) The Motion is now ripe for disposition.

## II.  LEGAL STANDARD

### A.  Motion to Strike Class Allegations

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)).

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

To satisfy Rule 23(a), (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply, adequacy). *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)).

Rule 23(b) permits class certification if: (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit. Fed. R. Civ. P. 23(b). Rule 23(b)(3) requires that common class questions predominate over questions affecting only individual members and that the class action mechanism be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Although class certification typically follows discovery, courts may strike class allegations at the pleading stage where it is clear from the face of the complaint that the requirements of Rule 23 cannot be satisfied as a matter of law. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015). Rule 12(f) permits courts to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading, and Rule 23(c)(1) requires courts to determine "[a]t an early practicable time" whether a proposed class satisfies class certification requirements. Fed. R. Civ. P. 12(f), 23(c)(1).

Whether to grant a motion to strike is reserved to the discretion of the district court. *Krisa v. Equitable Life Assurance Soc'y*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (citation omitted). A district court may strike class action allegations without permitting discovery or waiting for a

certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action. *See Zarichny*, 80 F. Supp. 3d at 615; *Semenko v. Wendy's Int'l, Inc.*, No. 12-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).

### B.     Motion to Dismiss

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

#### A. Motion to Strike Class Allegations

Defendants argue that Plaintiffs' proposed class and subclasses cannot be certified as a matter of law because they fail Rule 23's adequacy, predominance, and superiority requirements. (*See generally* Defs.' Moving Br., ECF No. 46-1.) Because Rule 23's adequacy requirement is dispositive of Defendants' Motion to Strike, the Court addresses this issue first.

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class."[3] Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations omitted). The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) (citations omitted).

If a "fundamental" conflict exists within a class, the adequacy requirement is not satisfied, and class certification will be denied. *Dewey*, 681 F.3d at 183-84; *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 431 (3d Cir. 2016), *as amended* (May 2, 2016) (explaining that a "fundamental" conflict "will defeat a finding of adequacy"). One such fundamental conflict arises when a proposed class combines both "present and future injury plaintiffs." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 431.

---

[3] "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc.*, 521 U.S. at 626 n.20 (citation and internal quotation marks omitted). "The adequacy heading also factors in competency and conflicts of class counsel." *Id.*

Two decisions from the Supreme Court, *Amchem* and *Ortiz*, address this fundamental conflict in the context of mass tort litigation, and provide the governing framework for the Court's analysis. *See Amchem Prods., Inc.*, 521 U.S. at 591; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

In *Amchem*, counsel sought to approve a class settlement and certify a nationwide class of persons who were exposed to asbestos-containing products. *See Amchem Prods., Inc.*, 521 U.S. at 591. The class settlement purported to resolve the claims of persons who had already sustained injuries because of asbestos exposure, and those who had been exposed to asbestos, but had not yet developed any injury. *See id.* The district court approved the settlement and certified the class, but the Third Circuit reversed, finding, *inter alia*, that "serious intra-class conflicts" existed between the "presently injured and future[] plaintiffs," and this conflict precluded a finding of adequacy. *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630-31 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). As the Third Circuit explained, presently-injured plaintiffs, and plaintiffs without any injury, have materially different priorities in negotiating a settlement. *Id.* While presently-injured plaintiffs seek to "maximize current payouts," exposure-only plaintiffs seek to preserve funds for future claims, protect against inflation, ensure flexibility as science evolves, and retain meaningful opt-out rights should injury later occur. *Id.* The Supreme Court affirmed the Third Circuit on this point and agreed that "the interests of those within the single class are not aligned." *Amchem*, 521 U.S. at 626.

*Ortiz* reinforced this principle.[4] There, the Court emphasized that after *Amchem*, it is "obvious" that a class divided between holders of present and future claims "requires division into

---

[4] *Ortiz* also concerned a settlement in a class action suit against an asbestos manufacturer. 527 U.S. at 855-59.

8

homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel." *Ortiz*, 527 U.S. at 856 (citations omitted).

The principles articulated in *Amchem* and *Ortiz* apply in equal force here.[5] Plaintiffs seek to litigate a class action on behalf of individuals who allege a present cancer diagnosis, as well as individuals who allege no present injury at all. (*See generally* Am. Compl.) As the Supreme Court recognized in *Amchem* and *Ortiz*, these groups have materially divergent interests. *Amchem*, 521 U.S. at 626; *Ortiz*, 527 U.S. at 856. Those already diagnosed with cancer may reasonably prioritize immediate compensatory and punitive damages, while those without a cancer diagnosis may reasonably prioritize a fund for medical monitoring, long-term preservation of resources, and protections against premature valuation of their claims.

Plaintiffs attempt to address these material conflicts by dividing the class into five subclasses. (Am. Compl. ¶ 45.) Critically, however, Plaintiffs do not identify separate counsel for the different subclasses or articulate any safeguards to ensure that the interests of one group are not subordinated to those of another. *See Ortiz*, 527 U.S. at 856 ("[A] class divided between holders of present and future claims . . . requires division into homogenous subclasses . . . *with separate representation to eliminate conflicting interests of counsel.*" (emphasis added) (citations omitted). The Amended Complaint offers no explanation of how counsel would navigate these competing incentives without separate representation, or how the conflicts identified in *Amchem* and *Ortiz* would otherwise be eliminated. *See Amchem*, 521 U.S. at 627 (denying class certification where

---

[5] Although *Amchem* and *Ortiz* arose in the settlement context, their adequacy analysis is not limited to settlement classes. In both cases, the Supreme Court's reasoning relied on Rule 23(a)(4) itself, which applies equally to litigation classes. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 818 (3d Cir. 1995) (explaining that "the standard for [class] certification is the same for settlement classes as for conventional classes").

there was no "structural assurance of fair and adequate representation for the diverse groups and individuals affected").

Plaintiffs principally rely on *In re Valsartan* to argue that their subclasses are sufficient. (Pls.' Opp'n Br. 16, 18, 20-23, ECF No. 49 (citing *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875, 2023 WL 1818922, at *1 (D.N.J. Feb. 8, 2023)).) Plaintiffs' reliance on this case, however, is misplaced. In *Valsartan*, the defendants did not challenge the adequacy of the medical monitoring subclasses, nor contend that the interests of the class members were not aligned. *In re Valsartan*, 2023 WL 181922, at *35. The Court, accordingly, did not analyze adequacy under *Amchem* or *Ortiz*, nor discuss the varying interests between holders of present and future claims.[6] *See id.*

Applying the principles articulated in *Amchem* and *Ortiz*, the Court concludes that absent structural protections such as separate representation for the different subclasses, the proposed class suffers from a fundamental adequacy defect that cannot be cured through discovery. *See Georgine*, 83 F.3d at 631 (denying class certification and holding that "[t]he lack of any structural protections in this case thwarted the adequate representation of the disparate groups of plaintiffs"). The Court, accordingly, will grant Defendants' Motion to Strike, and Plaintiffs' class allegations will be stricken from the Amended Complaint. *See Semenko*, 2013 WL 1568407, at *11 (granting

---

[6] The facts of *Valsartan* are also distinguishable. *Valsartan* involved a products liability action in which it was "uncontested that the defendants' products were contaminated." *In re Insulin Pricing Litig.*, No. 17-699, 2024 WL 416500, at *40 (D.N.J. Feb. 5, 2024) (denying class certification and finding *Valsartan* "distinguishable"). The *Valsartan* plaintiffs also proposed extensive subclasses—asserting 93 subclasses for one set of economic loss claims and 19 subclasses for another—to account for variances in state law. *In re Valsartan*, 2023 WL 1818922, at *5. Here, by contrast, Defendants vigorously dispute Plaintiffs' core factual allegations, and Plaintiffs propose only five subclasses to encompass nineteen different claims. (*See generally* Am. Compl.)

10

motion to strike on the pleadings because "no amount of discovery will demonstrate that the class can be maintained").[7]

### B. Motion to Dismiss[8]

Defendants also move to dismiss Plaintiff Bynum's medical monitoring claim as insufficiently pleaded under either New Jersey or Washington law. (Defs.' Moving Br. 37-38.) Defendants argue that both jurisdictions permit medical monitoring claims only where a plaintiff alleges a present, existing injury, and here, Bynum alleges none. (*Id.*)

Plaintiffs do not dispute that Bynum has not been diagnosed with a Defined Injury, nor do they dispute that New Jersey and Washington law require a present injury to sustain a medical

---

[7] Because the Court concludes that Plaintiffs have failed to satisfy the adequacy requirement, the Court does not reach Defendants' additional arguments regarding predominance and superiority. *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147-49 (3d Cir. 2008). The Court, however, notes that Plaintiffs may face substantial obstacles to class certification if this litigation proceeds. *See, e.g., Georgine*, 83 F.3d at 627 (discussing the "proliferation of disparate factual and legal issues" that make class certification of medical monitoring and related claims improper); *Almond v. Janssen Pharms., Inc.*, 337 F.R.D. 90, 95-96 (E.D. Pa. 2020) (dismissing a nationwide no-injury medical monitoring class because "the variation in state law alone is sufficient to establish that maintenance of the action as a class is inappropriate" (citation and internal quotation marks omitted)); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998) (concluding class treatment involving medical monitoring claims was inappropriate in part because each class member would need to "present evidence" regarding his medical history); *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 489 (E.D. Pa. 1997) (finding "individual issues predominate over common issues" for medical monitoring claims).

[8] While Defendants' Motion to Dismiss seeks dismissal of "Plaintiffs' medical monitoring claims," (Defs.' Moving Br. 40), Plaintiffs correctly observe that Defendants only advance Rule 12(b)(6) arguments as to Plaintiff Bynum's medical monitoring claim (Pls.' Opp'n Br. 34). Defendants do not contest this characterization in their reply. (*See generally* Defs.' Reply Br., ECF No. 50.) The Court therefore confines its Rule 12(b)(6) analysis to Plaintiff Bynum's medical monitoring claim.

monitoring claim.[9] (Am. Compl. ¶ 1; Pls.' Opp'n Br. 34-35.) Plaintiffs instead contend that Bynum adequately alleges an injury because her asserted need for medical monitoring constitutes "a present and ongoing economic injury."[10] (Pls.' Opp'n Br. 34-35.)

Plaintiffs' argument is unpersuasive. As an initial matter, the Amended Complaint does not plausibly allege Bynum has suffered any economic injury. (*See generally* Am. Compl.) After reviewing the 189-page Amended Complaint, the Court can discern only a vague and conclusory allegation that Plaintiffs "have suffered economic losses." (Am. Compl. ¶ 429.) Plaintiffs, however, allege no facts in support of this claim, and the Court therefore cannot plausibly infer a present, economic loss from the allegations in the Amended Complaint.[11] (*See id.*) Even assuming, arguendo, that Bynum plausibly alleged an economic injury, economic harm alone is insufficient to sustain a medical monitoring claim under either New Jersey or Washington state law. *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. Sup. Ct. 2008) (holding that "injury" for a medical

---

[9] Plaintiffs also do not dispute that either New Jersey law (where Defendants reside) or Washington law (where Bynum resides) governs Bynum's medical monitoring claim. (Pls.' Opp'n Br. 34-35.) Because both jurisdictions require a present injury, the Court need not engage in a choice-of-law analysis. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008) (citations omitted) (explaining that under New Jersey's choice-of-law framework, "there is no choice-of-law issue to be resolved" where no actual conflict exists).

[10] Plaintiffs further argue, in cursory fashion, that because talcum powder exposure has been linked to "chronic inflammation and oxidative stress on genital tissues or cells," Bynum has suffered a physical injury sufficient to support a medical monitoring claim. (Pls.' Opp'n Br. 34-35.) The Amended Complaint, however, does not allege that Bynum experiences chronic inflammation, oxidative stress, or any other physical injury. (*See generally* Am. Compl.) Rather, it cites a single study concluding that "talc is a possible cause of cancer based on the totality of evidence . . . and a plausible biological pathway including chronic inflammation and oxidative stress." (Am. Compl. ¶ 133(z).) Because Plaintiffs do not allege that Bynum herself suffers from any physical injury, and because it is "axiomatic" that a plaintiff may not amend a complaint through opposition briefing, this argument fails. *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

[11] Plaintiffs also fail to cite any specific paragraph of the Amended Complaint in support of their asserted economic-injury theory. (*See* Pls.' Opp'n Br. 34.)

monitoring claim "requires something physical" such as illness or death); *Duncan v. Nw. Airlines Inc.*, 203 F.R.D. 601, 606, 609-10 (W.D. Wash. 2001) (explaining that Washington law does not permit recovery for a potential disease absent a "present, actual injury" and a "reasonable certainty that [the plaintiff] will contract the disease" (internal quotation and citations omitted)).

The Court, accordingly, dismisses Bynum's medical monitoring claim for failure to state a claim.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion is granted. The Court strikes Plaintiffs' class allegations, and Bynum's medical monitoring claim is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: January 29, 2026