**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JONI S. BYNUM, *et al.*, individually and on behalf of a proposed class,<br><br>Plaintiffs,<br><br>v.<br><br>RED RIVER TALC, LLC f/k/a, LLT MANAGEMENT LLC f/k/a/ LTL MANAGEMENT, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 24-7065 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Red River Talc, LLC, Johnson & Johnson, New JJCI, Johnson & Johnson Holdco (NA) Inc., Janssen Pharmaceuticals, Inc., Kenvue Inc., and J&J Services, Inc.'s (collectively, "Defendants") Joint Motion to Strike Class Allegations and Dismiss Certain Claims in Plaintiffs[1] Joni S. Bynum ("Bynum"), Donnaletta F. Ruiz, Shelly Williams, Joyce Ann Jones, Lisa Bieniek, Judy Morris-Patton, Joyce Swaim, and Linda Raia's (collectively, "Plaintiffs") Second Amended Complaint. (Defs.' Mot., ECF No. 58.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 66), and Defendants replied (Defs.' Reply Br., ECF No. 71). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion is granted in part and denied in part.

---

[1] Since Defendants filed the present Motion, Robin and James Coburn have been severed as plaintiffs from this action. (*See* Mot. to Sever, ECF No. 67; May 11, 2026, Order Severing Robin and James Coburn, ECF No. 69.)

# I. BACKGROUND[2]

## A. Factual Background

This action arises out of the long-running multidistrict litigation captioned *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation* (the "Talc Litigation," MDL No. 16-2738). The Court writes for the benefit of the parties and details only the most salient allegations necessary to contextualize the present dispute.

Plaintiffs filed the instant putative class action on June 17, 2024, nearly eight years after the Talc Litigation commenced. (*See generally* Compl., ECF No. 1.) Plaintiffs allege that they applied Defendants' Baby Powder and/or Shower to Shower products (the "Defendants' Products") to their genitals over a span of four or more years, and such use placed them at an increased risk of developing epithelial ovarian cancer, fallopian tube cancer, or primary peritoneal cancer (a "Defined Injury"). (Sec. Am. Compl. ¶¶ 1-8, ECF No. 55.) As a result of Plaintiffs' use of Defendants' Products for a period of more than four years, Plaintiffs sustained tissue, cellular, and subcellular injuries in the form of chronic inflammation and oxidative stress.[3] (*Id.*)

---

[2] The Court accepts the factual allegations in Plaintiffs' Second Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] No Plaintiff is currently diagnosed with a Defined Injury. (*See generally* Sec. Am. Compl.)

Plaintiffs seek to represent a class (the "Main Class") comprised of: (1) all female residents in thirty-eight states and territories[4] who, between 1960 and the present, applied Defendants' Products to their genitals for a period of more than four years, and who have not commenced an individual action or signed a written retainer agreement with non-class counsel for the pursuit of any individual, non-class personal injury claims and/or medical monitoring claims arising from the use of and/or exposure to Defendants' Products ("Qualifying Talc Users"); (2) the authorized representatives of legally incapacitated or incompetent Qualifying Talc Users; and (3) the spouses, family members, or dependents of Qualifying Talc Users who may properly assert derivative or independent claims. (*Id.* ¶ 49.)

Additionally, Plaintiffs seek to certify three subclasses. (*Id.* ¶ 50.) Plaintiffs define the three subclasses as follows:

> [Subclass 1 under Federal Rule of Civil Procedure 23(b)(3)[5]: Independent Claim for Medical Monitoring—] Qualifying Talc Users (Class Members) residing in Alaska, the District of Columbia, Idaho, Massachusetts, Montana, New Hampshire, New Mexico, South Dakota, U.S. Virgin Islands, West Virginia, or Wyoming and the Representative Claimants of legally incapacitated or Qualifying Talc Users (residing in the aforementioned jurisdictions) who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a "Defined Injury."

---

[4] Those states and territories include: (1) Alaska; (2) Arizona; (3) Arkansas; (4) California; (5) Connecticut; (6) the District of Columbia; (7) Florida; (8) Guam; (9) Hawaii; (10) Idaho; (11) Illinois; (12) Indiana; (13) Kansas; (14) Maine; (15) Maryland; (16) Massachusetts; (17) Minnesota; (18) Missouri; (19) Montana; (20) Nevada; (21) New Hampshire; (22) New Jersey; (23) New Mexico; (24) New York; (25) North Dakota; (26) Ohio; (27) Pennsylvania; (28) Puerto Rico; (29) Rhode Island; (30) South Carolina; (31) South Dakota; (32) Tennessee; (33) U.S. Virgin Islands; (34) Utah; (35) Vermont; (36) Washington; (37) West Virginia; and (38) Wyoming. (Sec. Am. Compl. ¶ 49, ECF No. 55.)

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

> [Subclass 2 under Rule 23(b)(2): Medical Monitoring Remedy—] Qualifying Talc Users (Class Members) residing in Arizona, Arkansas, California, Connecticut, Florida, Guam, Hawaii, Illinois, Indiana, Kansas, Maine, Maryland, Minnesota, Missouri, Nevada, New Jersey, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Utah, Vermont, or Washington and the Representative Claimants of legally incapacitated or incompetent Qualifying Talc Users (residing in the aforementioned jurisdictions) who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a "Defined Injury."
>
> [Subclass 3 under Rule 23(b)(3): Compensatory and Punitive Damages for Future Defined Injury—] Qualifying Talc Users (Class Members) residing in Alaska, Arizona, Arkansas, California, Connecticut, the District of Columbia, Florida, Guam, Hawaii, Idaho, Illinois, Indiana, Kansas, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Washington, West Virginia, or Wyoming who as of the date of the Court's Preliminary Approval and Class Certification Order have not been diagnosed with a "Defined Injury," and their Representative and Derivative Claimants.

(*Id.*) For Subclass 1, Plaintiffs Shelly Williams (West Virginia), Joyce Ann Jones (District of Columbia), and Lisa Bieniek (Massachusetts) serve as class representatives. (*Id.* ¶ 52.) For Subclass 2, Plaintiffs Joni Bynum (Washington), Donnaletta Ruiz (Pennsylvania), Judy Morris-Patton (Missouri), Joyce Swaim (California), and Linda Raia (Nevada) serve as class representatives. (*Id.* ¶¶ 1-2, 6-8, 52) For Subclass 3, all Plaintiffs serve as class representatives. (*Id.* ¶ 52)

Plaintiffs, and the subclasses, assert a total of nineteen claims against Defendants. (*Id.* ¶¶ 338-496.) Subclass 1 asserts a claim for medical monitoring, seeking damages for the cost and expense of medical monitoring including, but not limited to, baseline assessments, diagnostic testing, and preventative measures to facilitate the prevention and diagnosis of a Defined Injury. (*Id.* ¶¶ 338-49.) Subclasses 2 and 3 assert various strict liability claims, negligence-based claims,

fraud claims, statutory consumer protection claims under numerous state laws, and conspiracy-based claims. (*Id.* ¶¶ 350-452, 481-96.) For those claims, Subclass 2 seeks equitable relief in the form of a court-approved medical monitoring program and Subclass 3 seeks compensatory damages. (*Id.*) Subclass 3, moreover, asserts loss of consortium, wrongful death, and survivorship claims seeking monetary damages. (*Id.* ¶¶ 453-59, 476-89.) Finally, all subclasses assert a claim for punitive damages. (*Id.* ¶¶ 460-75.)

Defendants filed a Motion to Strike and Dismiss certain claims and class allegations in the Second Amended Complaint on April 2, 2026. (*See* Defs.' Mot.; *see also* Defs.' Moving Br., ECF No. 58-1.) Plaintiffs filed an opposition on May 5, 2026 (Pls.' Opp'n Br.), and Defendants replied (Defs.' Reply Br.).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Article III Standing[6]

Under Rule 12(b)(1), a defendant may move to dismiss a matter for want of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d

[6] As will be discussed below, Defendants have lodged an Article III challenge within their Motion. (*See* Defs.' Moving Br. 11-17.) Such a challenge must be considered under Rule 12(b)(1). *Pontes v. Rowan Univ.*, No. 20-2645, 2021 WL 4145119, at *2 (3d Cir. Sep. 13, 2021) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). Moreover, the Court acknowledges Plaintiffs' correspondence filed on May 14, 2026, asserting that dismissal on standing grounds would be procedurally improper because Defendants have not invoked the Rule 12(b)(1) standard. (May 14, 2026, Pls.' Corr. 2, ECF No. 70.) Plaintiffs' objection, however, will not preclude the Court from addressing Article III standing because "standing is an issue of subject matter jurisdiction," and the Court has "an independent obligation to determine whether subject[ ]matter jurisdiction exists, even in the absence of a challenge from any party." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (citation modified) (internal quotation marks and citations omitted).

1406, 1409 (3d Cir. 1991) (citation omitted). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation omitted). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). "Thus, '[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B. Motion to Dismiss for Failure to State a Claim**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must

identify "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Fidelcor*, 926 F.2d at 1409).

**C. Motion to Strike Class Allegations**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)).

To satisfy Rule 23(a):

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs

> must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply, adequacy).

*In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)).

Rule 23(b) permits class certification if: (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit. Fed. R. Civ. P. 23(b). For class-wide injunctive or declaratory relief, Rule 23(b)(2) requires that the party opposing the class "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Moreover, Rule 23(b)(3) requires that common class questions predominate over questions affecting only individual members and that the class action mechanism be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Although class certification typically follows discovery, courts may strike class allegations at the pleading stage where it is clear from the face of the complaint that the requirements of Rule 23 cannot be satisfied as a matter of law. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015). Rule 12(f) permits courts to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading, and Rule 23(c)(1) requires courts to determine "[a]t an early practicable time" whether a proposed class satisfies class certification requirements. Fed. R. Civ. P. 12(f), 23(c)(1).

Whether to grant a motion to strike is reserved to the discretion of the district court. *Krisa v. Equitable Life Assurance Soc'y*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (citation omitted). A district court may strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff

cannot meet the requirements for a class action. *See Zarichny*, 80 F. Supp. 3d at 615; *Semenko v. Wendy's Int'l, Inc.*, No. 12-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).

## III. DISCUSSION

Defendants move for dismissal of certain claims for lack of Article III standing and failure to state a claim, as well as to strike certain portions of Plaintiffs' class allegations. (*See generally* Defs.' Moving Br.) The Court addresses each in turn, beginning with Article III standing. *See Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir. 2001) (explaining that Article III standing issues must be addressed prior to the merits of a case).

### A. Article III Standing

Defendants contend that Plaintiffs lack Article III standing to: (1) assert claims under the laws of the thirty states and territories in which no Plaintiff resides or was injured; and (2) pursue, on behalf of Subclass 3, compensatory and punitive damages for future injuries that have yet to manifest. (Defs.' Moving Br. 11-17.[7]) Plaintiffs, however, take the position that Defendants' standing challenge should be resolved at the class certification stage because it is a question of predominance. (Pls' Opp'n Br. 18-24.)

Article III of the United States Constitution "confines the federal judicial power to the resolution of '[c]ases' and '[c]ontroversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[A] case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders*, 81 F.4th at 286-87 (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). Article III

---

[7] Because an answer has not been filed, Defendants' attack on jurisdiction is facial. *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (explaining that a defendant's motion was a "facial attack" because defendant "filed the attack before it filed any answer to the [c]omplaint or otherwise presented competing facts"); *Curlin Med. Inc. v. ACTA Med., LLC*, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct, 27, 2016) ("[T]he Third Circuit's recent cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed." (citations omitted)).

standing exists if the plaintiff has: "(1) suffered an [injury-in-fact], (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The "injury-in-fact" inquiry is often determinative of standing. *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021). "The requirements for an injury-in-fact are well established: a plaintiff must show that [he or she has] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 223 (D.N.J. 2022) (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that is "real and not abstract." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *TransUnion*, 594 U.S. at 424). Moreover, "the injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *Id.* (citing *Lujan*, 504 U.S. at 560, n.1).

Against that backdrop, the standing issues before the Court concern whether Plaintiffs can: (1) on behalf of a putative multi-state class, assert claims under the laws of the thirty states or territories in which none of them reside or were injured; and (2) seek redress for a future Defined Injury. The Court addresses each in turn.

#### 1. *Plaintiffs lack Article III standing to assert state-law claims from states in which they do not reside*

"The requirements for standing do not change in the class action context." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). It is long settled that a plaintiff must "demonstrate standing for each claim [s]he seeks to press." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Article III standing "must be satisfied by at least one named plaintiff," while the

"unnamed, putative class members need not establish Article III standing." *Id.* at 359, 362 (internal quotation and citation marks omitted). In other words, the "named plaintiff[] who [seeks to] represent a class 'must allege and show that [she] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which they . . . purport to represent.'" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). To that end, "standing is not dispensed in gross," *TransUnion*, 594 U.S. at 431, and federal courts will not "exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim.'" *Neale*, 794 F.3d at 359 (quoting *Daimler*, 547 U.S. at 352). A court may only conduct a Rule 23 analysis after a class representative's standing is addressed. *See Mielo v. Steak N Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (citing *Neale*, 794 F.3d at 368 (observing that "a properly formulated Rule 23 class should not raise standing issues")).

The district courts in this Circuit, however, are split "over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states" *Cohen v. Subaru of Am., Inc.*, No. 12-8442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022), and there is no Third Circuit precedent directly on point. Two Third Circuit cases contribute to the ongoing split: (1) *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 362 (3d Cir. 2015), which held that "unnamed, putative class members need not establish Article III standing[ and i]nstead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing[.]"; and (2) *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478-83 (3d Cir. 2018), which, following *Neale*, found that the named plaintiffs had standing to pursue a putative nationwide class for violations arising under federal law. Neither *Neale* nor *Mielo*, however, resolved whether "named plaintiffs can assert claims on behalf of

putative class members which the named plaintiffs themselves do not have standing to bring." *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *8 n.2 (D.N.J. Oct. 19, 2023).

Nevertheless, some district courts read *Neale* broadly "to permit named class representatives who would not traditionally have Article III standing to bring claims on behalf of unnamed, putative class members who may have standing." *Id.* at *8 n.3 (first citing *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. 19-2875, 2022 WL 1013945, at *4 (D.N.J. Apr. 5, 2022); and then citing *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, No. 20-6717, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021). Other district courts, however, find that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (quoting *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011)); *see Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 150-51 (D.N.J. 2025) (collecting cases); *see also In re Fragrance Direct Purchaser Litig.*, No. 23-2174, 2025 WL 579639, at *17-18 (D.N.J. Feb. 21, 2025) (concluding that plaintiffs lacked Article III standing to pursue state law claims from thirty states and the District of Columbia where named plaintiffs only resided in eleven of those states). This Court joins those which do not read *Neale* broadly, and the

Court will not wait until class certification to resolve the issue of standing.[8] *See Serrano*, 773 F. Supp. 3d at 150 ("Why should defendants—and an overburdened Court—be dragged into protracted [multi-state class] discovery for a . . . certification that may never come?" (citation omitted)).

Here, Plaintiffs are residents of: (1) Washington; (2) Pennsylvania; (3) West Virgina; (4) the District of Columbia; (5) Massachusetts; (6) Missouri; (7) California; and (8) Nevada. (Sec. Am. Compl. ¶¶ 1-8.) In addition to those states, Plaintiffs' putative classes include thirty other states of which no current Plaintiff is a resident. (*See, e.g.*, *id.* ¶ 50.) Plaintiffs assert that they "do not seek to allege claims under the laws of [those] states" but that they "seek to represent class members who can raise such claims." (Pls.' Opp'n Br. 20.) Plaintiffs' Second Amended Complaint, however, brings nineteen state law claims on behalf of the putative classes encompassing thirty-eight different states without pleading any factual allegations connecting Plaintiffs' injuries to the thirty additional states in which they do not reside. (*See generally id.*) From the face of the Second Amended Complaint, therefore, it is clear that Plaintiffs have not pleaded a personalized, concrete injury in order to assert state law claims under the laws of the thirty states of which they are not residents. *Food & Drug Admin.*, 602 U.S. at 381.

---

[8] The Court acknowledges its departure from *Rolland v. Spark Energy, LLC*—on which Plaintiffs place their reliance (*see* Pls.' Opp'n Br. 20)—where this Court reserved standing considerations for the class certification stage. *See* No. 17-2680, 2019 WL 1903990, at *5 n.6 (D.N.J. Apr. 29, 2019). This Court in *Rolland*, however, did not grapple with the significance of *Neale* or *Mielo*, and *Rolland* involved striking nationwide class allegations. *Id.* at *2. Consistent with its decision today and its decision in *Rolland*, this Court has previously deferred consideration of standing to pursue claims on behalf of absent class members of a nationwide class until class certification, while simultaneously concluding that named plaintiffs cannot represent any putative state subclasses of which they are not a member. *See In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*, No. 17-2279, 2018 WL 4188459, at *8 (D.N.J. Aug. 31, 2018).

Moreover, Plaintiffs rely on several out of circuit cases that are not persuasive. For starters, the holding in *Langan v. Johnson & Johnson Consumer Cos.* is directly at odds with *Neale*, which is binding upon this Court. *Compare Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018) (holding that "[named] class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members") *with Neale*, 794 F.3d at 359 (explaining that Article III standing "must be satisfied by at least one named plaintiff" in a class action). The same is true for *In re Asacol Antitrust Litigation*. *Compare* 907 F.3d 42, 49 (1st Cir. 2018) (finding that the plaintiffs had Article III standing where the claims of the named plaintiffs paralleled those of the putative class members) *with Neale*, 794 F.3d at 359 (stating that courts "do not exercise jurisdiction over one claim simply because it arose from the same nucleus of operative fact" (internal quotation marks and citation omitted)). Lastly, the decision in *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 131 (4th Cir. 2021) addressed statutory standing, not Article III standing.

The Court, accordingly, dismisses without prejudice all claims brought on behalf of the unnamed putative class members who reside in the thirty states other than: (1) Washington; (2) Pennsylvania; (3) West Virgina; (4) the District of Columbia; (5) Massachusetts; (6) Missouri; (7) California; and (8) Nevada.

### *2. Subclass 3 lacks an injury-in-fact for its loss of consortium, wrongful death, and survivorship claims*

As discussed previously, an injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 223 (D.N.J. 2022) (quoting *Lujan*, 504 U.S. at 560). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly*

impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (citations omitted). As such, the Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury[-]in[-]fact,' and that '[a]llegations of possible future injury' are not sufficient." *Id.* (alteration and emphases in original) (citations omitted).

Defendants argue that Subclass 3 lacks Article III standing because it seeks prospective, compensatory relief for Qualified Talc Users who have not yet developed a Defined Injury. (Defs.' Moving Br. 16-17.) Plaintiffs contend, in opposition, that they asserted an injury-in-fact because Plaintiffs, and every Subclass 3 member, have alleged that the use of Defendants' Products for a period of four or more years caused them chronic inflammation and oxidative stress, which substantially increases the risk of developing a Defined Injury in the future. (Pls.' Opp'n Br. 23.)

Here, Subclass 3 pursues claims which seek to recover damages for their future development of a Defined Injury. Those claims include: (1) two products liability claims; (2) three warranty claims; (3) three negligence-based claims; (4) two fraud-based claims; (5) violation of consumer protection laws; (6) three conspiracy-based claims; (7) a punitive damages claim; (8) a claim for loss of consortium; (9) a claim for wrongful death; and (10) a claim for survivorship. (*See generally* Sec. Am. Compl.) Since Plaintiffs seek damages for their risk of future harm, they must allege that the "exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion*, 594 U.S. at 436 (emphasis in original). To that end, a plaintiff who alleges that "she was at risk of developing ovarian cancer, . . . may . . . establish[] standing based on a theory of future physical injury." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018) (explaining that "the law will sometimes permit plaintiffs to establish standing based on injuries that are likely to occur later in time"). All of the claims pressed by Subclass 3—except for the loss of consortium, wrongful death, and survivorship

claims—allege that inflammation and oxidative stress increase Plaintiffs' risk of developing a Defined Injury in the future. (*See* Sec. Am. Compl. ¶¶ 136(z), 358, 368, 377, 386, 395, 404, 414, 423, 431, 442, 451, 484, 490, 495.) Plaintiffs, accordingly, have adequately alleged an injury-in-fact for those claims based upon their increased risk of future physical injuries.

Subclass 3, however, does not have standing to pursue the claims for loss of consortium, wrongful death, and survivorship. Here, the Second Amended Complaint alleges that: "Defendants' conduct *may cause some members of Subclass 3 to die in the future*" and "the Spouses of [the] members of Subclass 3[] will suffer the loss of their loved one's support, companionship, services, society, love and affection *in the future if they should be diagnosed* with a Defined Injury." (Sec. Am. Compl. ¶¶ 457, 477, 482 (emphases added).) At present, the Second Amended Complaint does not allege facts permitting the Court to infer that Plaintiffs are at risk of death or that any of Plaintiffs' family members have suffered, or are at risk of suffering, the loss of Plaintiffs' companionship due to the diagnosis of a Defined Injury. Because no Plaintiff alleges that she has a Defined Injury, Plaintiffs' loss of consortium, wrongful death, and survivorship claims are too speculative and attenuated to plausibly infer an injury-in-fact.[9] *See Clapper*, 586 U.S. at 410 (explaining that a "highly attenuated chain of possibilities" cannot support standing).

Accordingly, the Court dismisses without prejudice the claims for loss of consortium, wrongful death, and survivorship brought on behalf of Subclass Three for lack of Article III standing.

---

[9] Moreover, these claims may not be ripe for adjudication. *See First Choice Women's Res. Ctrs., Inc. v. Platkin*, No. 23-23076, 2024 WL 150096, at *3 (D.N.J. Jan. 12, 2024) ("[C]ourts should not be deciding issues that rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citation omitted), *appeal dismissed as moot sub nom.*, *First Choice Women's Res. Ctrs. Inc. v. Att'y Gen. N.J.*, No. 24-1111, 2024 WL 3493288 (3d Cir. July 9, 2024).

**B. Failure to State a Claim for Medical Monitoring Relief**

Defendants also move to dismiss Bynum's claim for medical monitoring relief as insufficiently pleaded under either New Jersey or Washington law.[10] (Defs.' Moving Br. 35-38.) Defendants argue that both jurisdictions permit medical monitoring claims only where a plaintiff alleges a present, existing injury, and here, none is alleged. (*Id.*) In opposition, Plaintiffs allege that Bynum's present harm takes the form of inflammation and oxidative stress, and such allegations are sufficient physical injuries under the Washington Products Liability Act, Wash. Rev. Code Ann. §§ 7.72.010, *et seq.* ("WPLA") and the New Jersey Products Liability Act, N.J. Stat. Ann §§ 2A:58C-1, *et seq.* ("NJPLA").[11] (Pls.' Opp'n Br. 36-40.)

Under the WPLA and the NJPLA, a plaintiff may recover damages for harm caused by an unsafe product. Wash. Rev. Code Ann. § 7.72.010(4); N.J. Stat. Ann. § 2A:58C-2. Harm under the WPLA is defined as "any damages recognized by the courts of" Washington. Wash. Rev. Code Ann. § 7.72.010(6). As stated by the Supreme Court of Washington, recovery under the WPLA is confined to "physical harm of persons and property [.]" *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 733 (Wash. 1992); *see also Smartwings, a.s. v. Boeing*

[10] Plaintiffs do not dispute that either New Jersey law (where Defendants reside) or Washington law (where Plaintiff Bynum resides) governs Plaintiff Bynum's claims for medical monitoring as a remedy. (Pls.' Opp'n Br. 36-40.) The Court need not engage in a choice-of-law analysis because the laws of both jurisdictions are not in conflict. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008) (explaining that under New Jersey's choice-of-law framework, "there is no choice-of-law issue to be resolved" where no actual conflict exists).

[11] Although Plaintiffs raise these state-specific products liability statutes in their briefing, claims arising under such statutes are not found in the Second Amended Complaint. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation modified)). It further appears that the WPLA and the NJPLA may absorb almost all of the common law claims pled in the Second Amended Complaint. *See In re Valstaran, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 364663, at *6-10, *19-20 (D.N.J. Feb. 3, 2021) (discussing how the NJPLA and WPLA subsume common law causes of action based on harm caused by a defective product).

*Co.*, No. 21-918, 2022 WL 579342, at *11 (W.D. Wash. Feb. 25, 2022) (explaining that to permit WPLA claims "to proceed upon the mere exposure to a risk of harm would substantially expand the scope of the WPLA and [such an interpretation] does not find support in the statutory text"). Relatedly, "harm" under the NJPLA is defined as, *inter alia*, "personal physical illness, injury[,] or death." N.J. Stat. Ann. § 2A:58C-1(b)(2); *see also Sinclair v. Merk & Co., Inc.*, 948 A.2d 587, 589, 595 (N.J. 2008) (stating that "the injury portion of the definition . . . require[s a] 'personal physical' injury, just like there must be a 'personal physical' illness and 'personal physical' death," and holding that the risk of future cardiovascular injury did not meet that definition).

Here, the Court finds that Bynum fails to state a claim for medical monitoring relief. Although Plaintiffs contend that the allegations of talc-induced inflammation and oxidative stress, on their own, constitute present physical harm under the WPLA and NJPLA (Pls.'s Opp'n Br. 40), Plaintiffs fail to cite any case law to support such a position. Furthermore, Bynum's allegations in the Second Amended Complaint implicate a medical monitoring remedy because the inflammation and oxidative stress Bynum complains of places her at an increased risk of developing a Defined Injury *in the future*. (*See generally* Sec. Am. Compl.) Bynum does not plead any facts plausibly alleging that she is experiencing present, physical harm concomitant to her inflammation and oxidative stress such that she can state claims for relief under the WPLA and NJPLA. (*See generally id.*)

The Court, accordingly, dismisses Bynum's claims for medical monitoring without prejudice for failure to state a claim.[12]

[12] Because the Court dismisses Bynum's claims, there is no remaining plaintiff who is a resident of the state of Washington. For the reasons stated *supra*, the remaining seven Plaintiffs lack Article III standing to pursue Washington state law claims, and as a result, those claims are subject to dismissal without prejudice.

### C. Striking Class Allegations

Defendants contend that, on the face of the Second Amended Complaint, Plaintiffs cannot meet cohesiveness and predominance requirements of Rule 23 given the myriad differences in state products liability and medical monitoring law, as well as the individualized factual issues that permeate throughout the putative classes. (Defs.' Moving Br. 17-35.) And although Plaintiffs have yet to move for class certification, Defendants argue that the class allegations must be stricken since no amount of discovery can resolve these issues. (*See id.* at 35.) Having significantly narrowed the scope of the putative classes, the Court finds that striking the class allegations at this juncture is premature.[13] *See, e.g.*, *Gujral v. BMW of N. Am., LLC*, No. 19-20581, 2022 WL 3646627, at *3 (D.N.J. Aug. 23, 2022) (denying motion to strike class allegations at the pleading stage and recognizing that "[c]ourts throughout the Third Circuit have routinely declined to hear premature arguments regarding class certification in similar circumstances").

As previously observed by this Court, Plaintiffs "face substantial obstacles to class certification if this litigation proceeds." *Bynum v. Red River Talc, LLC*, No. 24-7065, 2026 WL 242063, at *6 n.7 (D.N.J. Jan. 29, 2026) (collecting cases). But without the benefit of discovery, the Court is unable to make a determination, from the pleadings alone, as to whether: (1) individual issues regarding the need for medical monitoring precludes class treatment under Rule 23(b)(2); or (2) the variations of state law truly present individual questions of law and fact such that a Rule 23(b)(3) class is inappropriate. *See In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (explaining that "dismissal of class allegations at

[13] Although Defendants insist that the Third Circuit's decisions in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), and *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) render medical monitoring claims impossible to certify (*see* Defs.' Reply Br. 12), the Court is not persuaded that those cases support striking Plaintiffs' class allegations at this early stage. As Plaintiffs observe (Pls.' Opp'n Br. 34-35), both of those cases arose at the class certification stage.

[the pleading] stage should be done rarely and that the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery" (alteration in original) (citation omitted)). Those questions will be answered at a later stage upon a more developed record.

Accordingly, the Court declines to strike Plaintiffs' class allegations.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2026